IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT GALLEGOS, SR.,

    Petitioner,                           No. CIV S-04-2741 MCE GGH P

   vs.

TOM L. CAREY, Warden,

    Respondent.                       FINDINGS & RECOMMENDATIONS

_____/

*Introduction and Summary*

        On April 29, 2008 and April 30, 2008, the undersigned held an evidentiary hearing with respect to respondent's motion to dismiss. Petitioner alleged "extraordinary circumstances" excusing a timely filing under the AEDPA statute of limitations on account of physical and mental health problems.

        For the reasons set forth below, petitioner is not entitled to equitable tolling; respondent's motion to dismiss based on the AEDPA statute of limitations should be granted.

*Background*

        Without repeating the substance of the undersigned's order setting this evidentiary hearing, Order of August 10, 2007, the undersigned essentially found that petitioner's federal habeas filing would be time barred unless petitioner could qualify for equitable tolling from the

1

date of October 12, 2002, to the date of filing of the federal petition, December 3, 2004. The undersigned found that the temporary prison lockdowns would not qualify as reasons to equitably toll the limitations period. Moreover, the lack of education in the law *per se* was also not cognizable for equitable tolling.

       The court did hold open the possibility that petitioner might be able to prove his mental and physical incompetency, citing <u>Laws v. Lamarque</u>, 351 F.3d 919, 923 (9th Cir. 2003): "a 'putative habeas petitioner's mental incompetency [is] a condition that is, obviously, an extraordinary circumstance beyond the prisoner's control,' so 'mental incompetency justifies equitable tolling' of the AEDPA statute of limitations." An evidentiary hearing was ultimately scheduled and held.

       It is important to emphasize the pertinent period of time to be analyzed here. The only time equitable tolling is needed commences from the time of the Superior Court decision (when communicated – Oct. 12, 2002) to a time thereafter when it would be deemed "reasonable" for petitioner to have filed his next petition. For purposes of review here, the undersigned will initially examine the entire period between October 12, 2002 to the actual filing of his state Court of Appeal petition, approximately a year later – October 24, 2003. If this period of time is equitably tolled, statutory tolling could arguably kick in thereafter for the state supreme court petition, as it was filed at a reasonable time after the lower appellate denial, and petitioner's initial federal petition was quickly filed thereafter. That is, absent adverse consideration of the facially unreasonable delay in the filing of his Court of Appeal petition, the federal petition would have been timely filed with appropriate statutory tolling.[1] On the other

---

[1] The state supreme court decision was denied based on its untimeliness, and as set forth in the August 10, 2007 order, the time period prior to its filing would not normally qualify for statutory tolling as it was not "properly filed" on account of delay. <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 414, 125 S. Ct. 1807, 1812 (2005). The delay being referenced by the state supreme court must have been that delay prior to the filing of the Court of Appeal petition as the subsequent state supreme court petition was filed with relative speed. Assuming a valid excuse for the lengthy delay between the decision of the Superior Court and the filing in the Court of Appeal, it is highly doubtful that the state supreme court would have then denied its petition on a

hand, if there were no legally justified basis for the delay between the Superior Court decision, and the next appellate filing, the decision of the state supreme court to deny its petition as untimely would be an automatic disqualifier for federal statutory tolling, and the federal petition would be per se untimely.

However, because of the somewhat speculative nature of the above analysis, and in an abundance of caution, the undersigned will also analyze the entire period of time between the Superior Court decision (October 22, 2002) and the filing of the federal petition (December 3, 2004) for purposes of equitable tolling.  For this analysis, no speculation whatsoever need be employed concerning whether the California Supreme Court would have issued the first untimeliness ruling had it known of medical, disabling facts. (See footnote 1).

*Discussion*

    A.  Change in the Governing Law as a Reason For Equitable Tolling

Petitioner first asserts that the case of Evans v. Chavis, 546 U.S. 189, 126 S.Ct. 846, 849 (2006) changed the law in the Ninth Circuit regarding the availability of statutory tolling for lengthy time periods "in-between" the actual pendency of state habeas corpus petitions.  Under prior Ninth Circuit precedent, if the state court did not unambiguously identify the time period in questions as being too lengthy for state purposes, the interval between filings of state petitions was automatically considered timely under state law.  See Chavis v. LeMarque, 382 F.3d 921, 925-926 (9th Cir. 2004).  Evans v. Chavis overturned this reasoning and held that the federal courts must determine what would be a reasonable delay in filing state petitions when the state court decisions were silent on the subject, and that 30-60 days was a presumptive time limit for the filing of such petitions.

---

timeliness basis had it known of very severe mental and medical impairments which would constitute a period of incompetence to file.  See In re Clark , 5 Cal. 4th 750, 775, 21 Cal. Rptr. 2d 509, 526 (1993), stating that delay in filing a petition could be overlooked "where the petitioner was unable to present his claim."  A delay in the filing of the Court of Appeal petition would in all probability then have been found "reasonable" based on the same medical reasons.  In other words, petitioner would probably have been found eligible for statutory tolling.

1  Petitioner then contends that the recent case of Harris v. Carter, 515 F.3d 1051
2  (9th Cir. 2008), permits equitable tolling when there has been a change in the law.  While Harris
3  does indeed stand for that proposition in the context of the legal issue presented there, there are
4  several reasons why Harris cannot aid petitioner.
5  From her position on equitable tolling on account of mental/physical illness, i.e.,
6  that petitioner was mentally unfit to even understand that a petition need be timely filed,
7  petitioner's counsel understands that she cannot logically contend that petitioner was "relying"
8  on the state of Ninth Circuit law when he unduly delayed the filing of his second state petition
9  (addressed to the Court of Appeal).[2]  Nevertheless, petitioner contends that reliance on the old
10 law is not required for this "change-in-law" equitable tolling.  Petitioner's counsel is incorrect.
11 First, in Harris, a petitioner's necessary reliance on the old law was emphasized:
12 "The critical fact here is that *Harris relied in good faith* on then-binding circuit precedent in
13 making his *tactical decision* to delay filing a federal habeas petition."  Id, 515 F.3d at 1055
14 (emphasis added).  A "critical fact" of necessary reliance is not one which can be found to be
15 inconsequential here, and petitioner's plea that it be found so is not a faithful reading of Harris.
16 See also Livermore v. Watson, 556 F. Supp. 2d 1112 (E.D. Cal. 2008).
17 Second, eliminating a reliance requirement would be illogical.  If one is ignorant
18 of the old law regarding timely filing, or incapable of understanding it, the change in law by
19 definition cannot be a reason why a petition was not timely filed.  The change in law would
20 obviously have nothing to do with the tardiness.
21 At hearing, petitioner nowhere testified that he was relying on Ninth Circuit law
22 which might have allowed for lengthy tolling between state petitions.  Indeed, petitioner's
23 position through his counsel was that he was entirely unable to know what the law might be.

---

[2] As set forth in the August 10, 2007 order, petitioner delayed from October 12, 2002 (Superior Court decision) until October 24, 2003 to file his petition in the Court of Appeal.  This year long period is the critical period in that the statute of limitations otherwise expired during this time, and subsequent state filings were inconsequential for statutory tolling periods.

4

1  Petitioner testified that once he handed the matter of his second habeas petition over to a
2  jailhouse lawyer (Mr. Pogue) he was completely relying on Pogue to get the petition [to the Court
3  of Appeal] in filing shape.  RT (Evid. Hearing) 16-18.  Petitioner could not have been relying on
4  the state of Ninth Circuit law.  Therefore, petitioner cannot assert <u>Harris</u> as a reason for equitable
5  tolling because <u>Harris</u> requires reliance.

But there is an even more fundamental reason why no petitioner, prospectively speaking, could have been relying on prior Ninth Circuit law in delaying the filing of state habeas petitions in the <u>Chavis v. LeMarque</u> context (a different context than that presented in <u>Harris</u>).  It was never the law that one could delay in filing a subsequent state habeas petition as long as one desired.  <u>Nino v. Galaza</u>, 183 F.3d 1003, 1006 (9th Cir. 1999) (interim periods tolled so long as one is "properly pursuing" collateral remedies).  All <u>Chavis v. Le Marque</u> recognized, as had previous Ninth Circuit cases, was that *in retrospect,* the period between state filings, even if lengthy, would count for *statutory* tolling if the *subsequent* state court decision did not expressly rule that its habeas filing was unduly delayed.  However, *prospectively,* no petitioner could, after receipt of a lower court state habeas petition, predict with any reasonable certainty what would be the ruling of the next state court if he delayed filing the petition, i.e., would it be denied for untimeliness or on the merits?  Thus, petitioner here, even assuming his knowledge of Ninth Circuit law at the time, could not possess reasonable reliance on that law to delay his next state habeas filing – such reliance would be based on an unknown, future  fact.

For these reasons, petitioner acquires no relief from the running of the statute of limitations, and specifically the doctrine of equitable tolling, because of a change in the law.

B. <u>Equitable Tolling On Account of Mental/Physical Limitations</u>

1. **The Correct Standard**

Petitioner's assertion, through his counsel, that petitioner's mental/physical condition rendered him unable to timely file his Court of Appeal state habeas petition, and hence the limitations period should be tolled, is a much closer and complex question.  There is no doubt

that a sufficiently severe mental or physical handicap could render a timely filing not possible. Laws v. Lamarque, 351 F.3d 919 (9th Cir. 2003).

In the order for evidentiary hearing, the undersigned found that the correct standard for mental/physical problems was one of "incompetence":

> In Laws, the Ninth Circuit noted again that equitable tolling is available in this circuit only "'when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'" Laws, supra, at 922, citing Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003). The Laws Court, id., also noted that grounds for equitable tolling under § 2244 (d) are "highly fact-dependent," quoting Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000). The Ninth Circuit held that it was an abuse of discretion for the district court to deny Laws's petition, where he claimed he was mentally ill between April 23, 1996 (the date of AEDPA's enactment) and May 16, 2000, when his first state habeas petition was filed and entitled to equitable tolling, without the court's having ordered development of the factual record supporting the claim. Id., at 922-23. The case also makes clear that the Ninth Circuit observed that it had previously "held that a 'putative habeas petitioner's mental incompetency [is] a condition that is, obviously, an extraordinary circumstance beyond the prisoner's control,' so 'mental incompetency justifies equitable tolling' of the AEDPA statute of limitations." Laws, supra at 923, citing Calderon v. U. S. Dist. Ct. (Kelly), supra, 163 F.3d at 541. In doing so, the Ninth Circuit in that case noted, as a backdrop, that the trial court had expressed its concern about Laws's competency and had ordered psychiatric examinations and a hearing under Cal. Penal Code § 1368, and had found, in the face of conflicting expert testimony that Laws was "'for the present at least'" competent to stand trial. Laws, supra, at 921. Petitioner herein suggests that prior to trial he suffered from some form of drug-induced delusional disorder, although there is no representation that his competency was at issue at his trial. Nevertheless, the Laws Court stated that the determination of competency at the time of trial (despite the evidence of serious mental illness) did not bear on the competency of Laws for the period of time at issue for which no medical records had been provided. In the instant case, petitioner has produced some, but not adequate evidence of mental illness during the relevant period, which appears to be contradicted by actions he did undertake, misdirected though they might have been to go forward with his state petitions. Petitioner, should he elect to go forward with an evidentiary hearing, must demonstrate that his mental condition was in such a state of deterioration as to constitute an extraordinary circumstance such that his time for filing should be equitably tolled. He must make a showing his mental incompetence was such that he could not have met the standard for competency to proceed with trial. Dusky v. U.S., 362 U.S. 402, 80 S. Ct. 788 (1960) (the "test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him"). Adapting that to the habeas context would require that petitioner must demonstrate that at the times for which he seeks equitable tolling, he did not have a reasonable degree of rational understanding and that he suffered from a lack of such understanding with regard to what was required of him in the filing of

> his petitions; in doing so, he must be able to explain, how, in light of his efforts to take certain steps to proceed with his habeas petition in the same period, such steps do not fatally undermine his claim of mental incapacity.

Order, August 10, 2007 at 13-14.

The undersigned confirms and elaborates on that standard of incompetence with respect to asserting equitable tolling on account of mental or physical problems.

First, any lesser standard than incompetence does not equate to the "'impossible to file a petition'" language in Laws. The Ninth Circuit itself spoke of mental illness and *incompetence* to timely file in the same breath. "For that purpose, it is pertinent that a *pro se* inmate's actual mental incompetence may be at least as much of an external bar to his meeting AEDPA's strict deadlines...." Laws, 351 F.3d at 923. Secondly, any lesser standard would be impossible to quantify. "More difficult" to timely file is standardless. Further, what would it mean in terms of timely filing if one was "substantially impaired" in the context of timely filing a petition? Essentially, it would mean anything to anyone. Any general, depressive atmosphere in a prison setting which affects a prisoner could conceivably qualify.

Moreover, the question of incompetence to timely file encompasses more than just the inability to draft and file a pro se petition. It is a fact of prison life, and one borne out by the facts in this case, that prisoners often do not draft their own pleadings. This may be so because of language problems, illiteracy, low mental functioning, and the like. Rather, it is common that a person with legal experience, aka jailhouse lawyer, takes over the drafting of pleadings for a fee or for free. A competence standard which fails to take into account this reality is artificial and arbitrary. Thus, any incompetence standard must be tailored to the ability to request or utilize available assistance, not just the ability to draft a petition. In other words, the critical inquiry is whether the prisoner can understand that the filing of a petition is necessary, and can take some steps to make that happen. If a non-English speaker's ability to acquire assistance from other inmates will preclude equitable tolling, and it does, Mendoza v. Carey, 449 F.3d 1065, 1070 (9th Cir. 2006), a prisoner who is mentally or physically impaired, but who is able to acquire legal

assistance will be similarly precluded.

At one point the undersigned was concerned about a possible Catch 22 brought about in this non-capital habeas case by Rohan ex rel. Gates v. Woodford, 334 F.3d 803, 813 (9th Cir. 2003), i.e., if a capital habeas petitioner is, or becomes, incompetent during the course of habeas proceedings, the case must be stayed until competency returns. However, the undersigned is not concerned about this any longer. The "delay" stakes in a capital habeas case are precisely opposite the stakes in a non-capital habeas. In a capital case, delay ordinarily favors the petitioner; in the non-capital setting, delay will inure to the detriment of the person bringing the petition. Application of Rohan in the non-capital setting would itself present a Catch 22 to the individual who claims incompetence in the underlying proceedings. That is, petitioner would never get to prove his allegations in federal habeas because he would be prevented from proving them on account of his present incompetence. Even if there were not an underlying claim of incompetence at trial, it is difficult to believe that a petitioner would want to file a federal habeas to get his conviction overturned and at the same time desire to have his federal habeas stayed. Logic limits Rohan to capital cases and the undersigned is unaware of its application outside of that context.

Thus, the standard petitioner must show to obtain equitable tolling is one of incompetence to timely file. Petitioner must show that he was unable by reason of mental or physical defect to understand his need to timely file a habeas petition and unable to take steps to effectuate that filing. Included within this showing would be a demonstration that during the pertinent period, he was unable to ask for available assistance in filing the habeas. If a physical condition were at issue, the demonstration would be one of such physical incapacity, pain, complications, and the like over a significantly long period in the pertinent time period that neither a filing or request for available assistance could be made.

\\\\\

\\\\\

2. **<u>Application of the Standard to This Case</u>**[3]

There is no doubt from the facts adduced at evidentiary hearing that petitioner would find it very problematic to himself timely draft an intelligible petition for use in federal court. His mental impairments, interferon treatment for Hepatitis C, and episodic back pain during the pertinent period combined to make such individual effort unlikely, and in the words of his expert, petitioner was "seriously impaired" in the filing of a timely habeas petition.[4] To the extent that respondent's expert contended otherwise, that contention is rejected as being contrary to the weight of medical, testing and observational data. That is why petitioner's filings were, for the vast majority, prepared by someone else on his behalf.

But being "seriously impaired" insofar as timely filing intelligible petitions is not the same as being incompetent to do so under the legal standard set forth above. The facts demonstrate that after direct review of his case was finalized, *petitioner himself* commenced preparations for filing a *timely* petition for habeas corpus in the Superior Court because his "three strike" comrades were so filing, and petitioner thought it in his interests to file also. RT (Evid. Hearing) 64. He was then able to ask for, and receive, help in drafting this petition. <u>Id</u>. After he had finally received notice from the Superior Court concerning the denial of that petition (October 12, 2002), at a time precisely unknown to the record, *petitioner* was again found in the law library preparing his next petition. Mr. Pogue, a legally educated jailhouse lawyer who encountered petitioner in that place, persuaded petitioner to let Pogue handle the drafting aspects of the next petition. RT (Evid. Hearing) 16-17. Whether petitioner was doing an abysmal job with preparing this petition, or not, the point is that he was aware for his own reasons that a

---

[3] The undersigned will not discuss all of the medical records and all of the testimony in these Findings and Recommendations. Rather, the undersigned will reference aspects of the record important to the decision in these Findings.

[4] "It is my opinion that during the period from the beginning of Mr Gallegos['] current incarceration to the present time he ha[s] been afflicted by a series of mental and physical disorders that have seriously impaired his capacity to focus his attention and energy on the timely filing of habeas corpus petitions." Petitioner's Exhibit B, Jackman Report at 2.

petition needed to be filed, and he was able to acquire assistance for its filing.  *Cf* Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005) (rejecting a claim that mental and medical problems prevented the filing of a petition at a specific time, when petitioner's filings bracketing the date in question showed his ability to so file).

Not only do the historical facts demonstrate a lack of incompetence, but also, the medical facts fall short as well.

Petitioner has had serious problems with past substance abuse.  During his most recent imprisonment, he has been treated by mental health professionals for depression and episodic hearing of voices.  Exhibit B, supra, and Exhibit D.  Dr. Jackman diagnosed petitioner as schizophrenic, paranoid type, depressive disorder and substance abuse.  Petitioner's judgment was clouded by an obsessive focus on his delusions.  Nevertheless, it would be a mistake to assess petitioner as non-functioning in day-to-day thought and activities.  Petitioner was also found to have normal continuity of thought, normal abstract thinking, normal orientation as to time, place and person, and no memory impairments.  Respondent's expert, Dr. Estner, believed petitioner to be malingering to a significant degree, Respondent's Exhibit 1, and even some of Dr. Jackman's tests indicated the possibility of malingering.  RT 129-130.  Nor do the medical records by any means show an every day problem with voices or delusions; Exhibit D; petitioner's medications often helped in this respect.

During the pertinent period from October 22, 2002 to October 2003 (prior to the filing of the state appellate petition), the medical records do not show that petitioner was having such a hard time medically speaking, that he would be considered unable to think about or take any action with respect to a habeas petition. First of all, the facts are undisputed that he in fact was in the law library working on a petition.  See also Exhibit B at 195 (Nov. 4, 2002): "I'm alright." O:....Work  fine. No [drug]side effects. Nothing to discuss when asked.; Exhibit B at 190 (Jan. 23, 2003) "Some mild depressive sx.– sadness."; Exhibit B at 188 (Jan. 23, 2003): All aspects of cognition within normal limits; no hallucinations or delusions; Exhibit B at 187 (April

15, 2003): "[Inmate] presents w/euthymic mood. He is engaged in the conversation and states that he does not have 'any complaints.'....appears to be stable psychiatrically [although still in need of further monitoring]"; Exhibit B (March 30, 2003): "[Inmate] discharged from ad-seg...I/M appeared stable [without] m/h complaints."; Exhibit B at 165 (May 9, 2003): "Pt denies problems– sister called CSP Solano worrying about pt's safety. Discussion [with] pt reveals he was upset at not getting visits from his sister but strongly denies any intention to harm or kill himself. He states he was trying to make her feel guilty...."; Exhibit B at 155 (June 23, 2003): "Anxiety and recurrent depression are quelled by trazadon....appears moderately anxious [without] delusions"; Exhibit B at 153 (Aug. 29, 2003): "Doing well on low dose trazadon- [depression down] racing thoughts [down]"; Exhibit B Jan. 16, 2004): "[No] complaints....Assessment: Stable." The undersigned does not mean to indicate that plaintiff did not have his bad days, especially with respect to his back pain, and at times his interferon treatment, see petitioner's testimony; the undersigned is finding that no significantly continuous period of incompetency is at all demonstrated.[5]

Dr. Jackman stated that it would be "hard to say" whether petitioner was incompetent under traditional legal definitions of incompetency. RT (Evid. Hearing) 139-141. He also testified that petitioner's actions in a disciplinary proceeding during the pertinent time could be indicative of competency. See - RT (Evid. Hearing)141-142 regarding observations of custody personnel during a disciplinary proceeding in 2003 – if the observations were correct, petitioner would be found competent; RT (Evid. Hearing) 144, 145. Nothing in the records up to 2004 (when florid psychiatric symptoms were temporarily observed) would demonstrate

\\\\\

---

[5] Dr. Jackman thought that petitioner was a poor reporter of his symptoms. However, the record is simply too replete with non-complaints (petitioner could complain when he wanted to) and favorable assessments from trained mental health personnel to disregard the seemingly overall competency of petitioner. See footnote 6 below where petitioner did report deleterious psychiatric symptoms.

petitioner's incompetency. [6]

Pogue testified that at some undetermined time in 2002 or 2003, he encountered petitioner in the law library who was drafting a new state habeas petition by copying an old legal brief. Pogue told him that he could just not copy the old brief, but had to respond to the points raised in the last judicial decision. RT (Evid.Hearing) 16-17. Thereafter, Pogue undertook to draft all of the Court of Appeal petition.

Pogue testified that petitioner's mental and physical condition made it not possible for petitioner to assist Pogue in the drafting of the petition. RT (Evid. Hrng) 16, 18. But whatever the accuracy of that observation, it does not appear that Pogue ever needed such assistance, as he had all the pertinent information with which to file the Court of Appeal petition. To this day, there does not appear to be any issue which required, or requires, any significant input by petitioner. Pogue testified that he did not think he knew about the prior Superior Court petition and decision, RT (Evid. Hearing) at 30-32, but the undersigned finds that not to be accurate. When one compares the Superior Court petition with the petition filed with the Court of Appeal, the mirror image of the petitions, in terms of substance of issues and even the order in which they are listed, directs a decision that Pogue had access to the previous petition, and in all probability, the Superior Court decision. See Second Amended Petition (federal) at 3-6 characterizing the issues in the state petitions.[7]

Moreover, the court finds Pogue's inability to explain why he did not think of the federal statute of limitations during preparation of the Court of Appeal petition to be improbable and self-serving given Pogue's ability to cite from memory certain provisions of AEDPA's

---

[6] Commencing in March 2004, petitioner's depression /psychosis began to intensify. Exhibit B at 138. By May 2004, petitioner was reporting "racing thoughts" and "hearing voices." Exhibit B at 132.

[7] The Court of Appeal petition did add two issues, an Eighth Amendment and exculpatory evidence issue, but these issues appear after the repetition of the Superior Court petition. Also, the Eighth Amendment issue also appears as a supplement to the Superior Court petition, Exhibit E, making it likely that Pogue had access to this as well.

limitations provisions.  Compare RT (Evid. Hearing) at 33 with 20.  An inference to be drawn is that Pogue contributed to the error by his mistaken (as it turned out) belief that commencing the state habeas process would automatically, statutorily toll the entire period of time within the state process regardless of the reason for the "down time" between petitions.[8]

       The relevant point here is that after Pogue took over the drafting of the Court of Appeal state petition, petitioner's mental/physical condition had nothing to do with the date the petition was filed; the filing date was within Pogue's thought process and control.  Petitioner had the assistance required by Mendoza v. Carey, supra.  The only point which cannot be determined is the precise date after the Superior Court decision that Pogue took over for petitioner.  Regardless of the precise date, the court has found that petitioner was not himself incompetent with respect to filing a petition (no matter how ineffectual), including asking for help during the October 2002-October 2003 time period.

       Even considering petitioner's psychotic relapse in mid-2004, equitable tolling remains unwarranted at that time.  There is no dispute in the facts that at this point petitioner had delegated all duties with respect to his habeas petitions to his jailhouse assistant, Pogue, and that *at this point*, the state supreme court and federal petitions were being filed within reasonable periods of time.  Further, the subsequent petitions here were largely repetitive.  Even if this period should count in the equitable tolling analysis, see discussion supra, if one is not personally involved in the drafting of petitions because of delegation to another, it cannot be said with any basis in reality, that a medical condition is the reason why a petition was not timely filed.  Petitioner could have been as competent as any normal individual, yet rely on another's representation that he would do the work – work that was in fact being reasonably performed after October 2003.

---

[8] Again, this was a mistaken belief in any event because one could not predict whether the state court would expressly deny the to-be-filed- petition on the merits (in which case tolling would occur under previous Ninth Circuit law) or based on untimeliness in filing the prospective state petition (not tolled).

13

1          The only issue remaining is the extent to which petitioner can benefit from Spitsyn v. Moore, 345 F.3d 796, 800-802 (9th Cir. 2003), assuming that Pogue took over drafting responsibilities within a month or two after the Superior Court decision, and assuming that Pogue was not sufficiently diligent. As a matter of policy, the undersigned declines to extend Spitsyn to encompass assistance from other inmates. If one were to do so, the entire AEDPA statute of limitations would be in jeopardy from equitable tolling. It is simply not extraordinary that jailhouse lawyers might give bad advice or work less diligently than they should. See United States v. Cicero, 214 F.3d 199, 204-05 (D.C. Cir. 2000) (no equitable tolling for jailhouse lawyer non-performance).

*CONCLUSION*

          In sum, petitioner was not sufficiently mentally or physically incompetent during the time period pertinent to *his* preparation of the Court of Appeal petition; especially he had the ability to seek help for the drafting of his Court of Appeal petition. Thereafter, regardless of his medical condition, he had acquired assistance and was not involved in the drafting process. To the extent that Mr. Pogue did not act quickly enough in preparing the Court of Appeal petition, petitioner cannot be awarded equitable tolling for this lack of diligence.

          Petitioner's motion to exclude expert witness testimony filed March 27, 2008 (docket #84) was previously resolved.

          IT IS HEREBY RECOMMENDED that respondent's motion to dismiss the entire federal petition on account of an untimely federal filing (Docket # 40) should be granted.

          These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

1. that failure to file objections within the specified time may waive the right to appeal the District
2. Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3. DATED: 08/28/08

/s/ Gregory G. Hollows

_____

UNITED STATES MAGISTRATE JUDGE

GGH:gh:035
gall2741.fr